**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

|  |  |
|---|---|
| **U.S. Commodity Futures Trading Commission,** )<br>)<br>) |  |
| **Plaintiff,** ) | **Case No. 11-448** |
| ) |  |
| **v.** ) |  |
| ) | **COMPLAINT** |
| **Jeffery L. Groendyke d/b/a** )<br>**JG Forex Fund,** ) |  |
| ) |  |
| **Defendant.** ) |  |

**COMPLAINT FOR INJUNCTIVE AND OTHER
EQUITABLE RELIEF AND FOR CIVIL MONETARY
PENALTIES UNDER THE COMMODITY EXCHANGE ACT**

## I.   SUMMARY

1.   From at least May 1, 2010 to the present (the "relevant time"), Jeffery L. Groendyke, individually and doing business as JG Forex Fund ("JGF") ("Groendyke" or "Defendant"), has fraudulently solicited and accepted at least $953,305 from at least 54 individuals for the purpose of trading off-exchange foreign currency contracts ("forex") on their behalf in a JGF pooled account.

2.   Groendyke misrepresents to prospective and existing JGF pool participants that his forex trading is profitable, and that the pool is earning monthly profits ranging from 6.37% to 42%. In reality, Groendyke has used less than half of the participant funds he accepted to trade forex and has lost over 88% of those funds trading.

3.   Groendyke also provides false monthly account statements to prospective and existing pool participants. For example, he sent statements stating that as of December 9, 2010,

the pool had $1,236,392 in two JGF "investment accounts" and $34,530 "investments in transit," and as of December 31, 2010, the pool had $1,548,679 in the same two JGF investment accounts.  In reality, the two accounts listed on Groendyke's account statements have been inactive with a combined balance of $124 or less as of September 30, 2010, and Groendyke's remaining forex trading account has suffered consistent losses and has had a balance of approximately $12 since October 2010.

4.      Groendyke has misappropriated at least $600,000 of the funds that he has accepted from participants by using them for purposes other than forex trading, including using new pool participant funds to pay existing pool participants purported forex trading profits in the manner of a Ponzi scheme.

5.      By making false representations to participants regarding his forex trading profits and losses and the use of participant funds, by misappropriating participant funds, and by issuing false account statements to participants, Groendyke has cheated and defrauded, or attempted to cheat and defraud, and willfully deceived, or attempted to deceive, his retail forex customers in violation of the Commodity Exchange Act (the "Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified at 7 U.S.C. §§ 1 et seq., specifically Section 4b(a)(2)(A), (B) and (C) of the Act, as amended, to be codified at 7 U.S.C. § 6b(a)(2)(A), (B) and (C).

6.    Additionally, on October 18, 2010, the Commodity Futures Trading Commission ("Commission" or "CFTC") enacted new regulations implementing certain provisions of the Dodd-Frank Act with respect to off-exchange forex transactions.  Beginning on October 18, 2010, and continuing to the present, Groendyke has engaged in fraud in violation of Commission Regulation ("Regulation") 5.2(b)(1), (2) and (3), to be codified at 17 C.F.R. § 5.2(b)(1)-(3).

7.    Also, beginning October 18, 2010,  Section 2(c)(2)(C)(iii)(I)(cc) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), and Regulation 5.3(a)(2)(i), to be codified at 17 C.F.R. § 5.3(a)(2)(i), require that a person must be registered as a commodity pool operator ("CPO") if he wants to solicit or accept orders from non-Eligible Contract Participants ("ECP") in connection with forex transactions for a pooled investment.

8.    Beginning on October 18, 2010 and continuing to the present, Groendyke, while acting as a CPO, solicited orders from non-ECPs in connection with forex transactions without registering with the CFTC, in violation of Section 2(c)(2)(C)(iii)(I)(cc) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), and Regulation 5.3(a)(2)(i), to be codified at 17 C.F.R. § 5.3(a)(2)(i).

9.    Plaintiff CFTC has jurisdiction over Groendyke's unlawful acts and practices and brings this action pursuant to Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1, and Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2), to enjoin such acts and practices and to compel Groendyke's compliance with the Act and Regulations.  In addition, the CFTC seeks restitution, disgorgement, rescission, civil monetary penalties, and such other equitable relief as this Court may deem necessary or appropriate.

10.     Unless restrained and enjoined by this Court, Groendyke is likely to engage in the acts and practices alleged in this Complaint, or in similar acts and practices, as described more fully below.

## II.     JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, as amended, to be codified at 7 U.S.C. § 13a-1(a), which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

12.     The CFTC has jurisdiction over the forex solicitations and transactions at issue in this case pursuant to Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1, and Section 2(c)(2)(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C).

13.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended, to be codified at 7 U.S.C. § 13a-1(e), because the Defendant resides in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

## III.     THE PARTIES

14.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, as amended, to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* (2010).

15.      Defendant Jeffery L. Groendyke d/b/a JG Forex Fund currently resides in

Middleville, Michigan, a village located outside of Grand Rapids.  He owns, operates and solicits

customers to invest in a commodity pool to trade forex.  Groendyke operates the commodity pool

from his residence.  He has never been registered with the Commission in any capacity.

## IV.    STATUTORY BACKGROUND

16.      For the purposes of Part 5 of Commission's Regulations regarding off-exchange

currency transactions, 17 C.F.R. §§ 5.1-5.25, a "commodity pool operator" is defined in

Regulation 5.1(d)(1), to be codified at 17 C.F.R. § 5.1(d)(1), as any person who operates or

solicits funds, securities or property for a pooled investment vehicle that is not an ECP as defined

in section 1a of the Act, in connection with forex transactions.

17.      For the purposes of Part 5 of Commission's Regulations regarding off-exchange

currency transactions, 17 C.F.R. §§ 5.1-5.25, a "retail foreign exchange dealer" ("RFED") is

defined in Regulation 5.1(h)(1), to be codified at 17 C.F.R. § 5.1(h)(1), as any person that is, or

offers to be, the counterparty to a retail forex transaction, except for a person described in sub-

paragraph (aa), (bb), (cc)(AA), (dd), (ee), or (ff) of Section 2(c)(2)(B)(i)(II) of the Act.

18.      A futures commission merchant ("FCM") is defined in Section 1a of the Act, as

amended, to be codified at 7 U.S.C. § 1a, as an individual, association, partnership, corporation

or trust that solicits or accepts orders for the purchase or sale of any commodity for future

delivery on or subject to the rules of any contract market and that accepts payment from or

extends credit to those whose orders are accepted.

19.      An ECP, as relevant here, is an entity with total assets exceeding $10 million or

an individual who has total assets in an amount in excess of (i) $10 million or (ii) $5 million and

who enters into the transaction in order to manage risk. See Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a.

## V.   FACTS OF DEFENDANT'S FRAUD

**A.   Groendyke's Forex Trading Accounts**

20.    Groendyke solicits and accepts funds primarily from individuals he knows through the church he attends in Middleville, Michigan, for the purpose of forex trading in his JGF. Groendyke accepts funds for JGF in his own name and/or made out to JGF, which he pools and deposits into one or more personal bank accounts in his name.

21.    Some or all of the participants in JGF are not ECPs.

22.    On information and belief, Groendyke represents to prospective participants that he is a successful trader with a profitable track record, and minimizes the risk of loss trading forex. In addition, Groendyke represents to pool participants that he offers a "long term investment" suitable for retirement funds. He represents that he is compensated by a commission in the amount of 50% of new forex profits.

23.    Groendyke represents to prospective and existing pool participants that he trades forex on their behalf in JGF pursuant to "automated systems" as well as manually inputting trades for the pool's accounts, and that he provides a limited power of attorney to third parties to trade for the pool either manually or pursuant to an "automated system."

24.    On information and belief, Groendyke has accepted at least $953,305 from at least 54 individuals for participation in JGF since at least May 2010.

25.    In reality, Groendyke has never held a trading account in the name of JGF. Since January 2010, Groendyke has opened and funded two forex trading accounts in his own name at Forex Capital Markets ("FXCM") and one forex account in his own name at Oanda Corporation

("Oanda").  Both FXCM and Oanda are registered with the CFTC as FCMs and RFEDs.
Groendyke falsely stated on the account opening documents to both FXCM and Oanda that the
accounts are individual accounts and do not contain any third party customer funds.

26.     Groendyke traded forex in his FXCM and Oanda accounts from January 24, 2010
through November 30, 2010.  None of Groendyke's forex trading accounts have been profitable,
and they collectively lost money in all but two of the eleven months in which Groendyke traded
in them.  Specifically, of the total of approximately $953,305 that Groendyke accepted and
pooled from pool participants, between January 24, 2010 and November 16, 2010, he deposited
$366,950 into his three personal forex trading accounts.  Through November 2010, Groendyke
suffered net losses of $324,228.72 trading forex and withdrew $42,645.05 from the three trading
accounts.

27.     Groendyke used the remaining funds for purposes other than forex trading,
including paying pool participants their purported forex trading profits in the manner of a Ponzi
scheme, and trading futures contracts in a personal futures trading account that he did not
disclose to pool participants.

28.     Groendyke represents to JGF participants that he trades funds in accounts held at
FXCM in London.  In fact, Groendyke has not traded in his FXCM or Oanda accounts since
November 2010, but he nevertheless continues to solicit and accept funds from customers for the
purpose of trading forex.

29.     As part of his scheme, Groendyke retained an accounting firm in Middleville,
Michigan to prepare statements for the JGF.  These statements include a report titled "JG Fund
Statement of Assets, Liabilities and Equity" and a report titled "JG Fund Statements of Revenue
and Expenses."  The accounting firm prepared these statements for the period since May 2010

based upon information that Groendyke provided to it and sent them to Groendyke with a letter affirming that the firm "compiled the accompanying statements of assets, liabilities and owners' equity of Jeffrey Groendyke d/b/a/ JG Forex . . . and the related statement of income and proprietor's capital  in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants."

30.     The "JG Fund Statement of Assets, Liabilities and Equity" purports to identify the value of JGF's two investment accounts numbered 8450 and 2368, and "investments in transit", as well as cumulated net income, contributions and distributions.  These statements generally reflected monthly growth in the current assets in the two investment accounts and represented that as of December 31, 2010, JGF had $1,090,661 in account "8450," and $458,018 in account "2368."  In reality, account #XXXXXX8450 that Groendyke holds at FXCM has had a $14 balance since November 13, 2010, and has not traded since September 2010, and account #XXXXXX2368 that Groendyke holds at FXCM has had a $49 balance since September 2010 and has not traded since then.

31.     The "JG Forex Statements of Revenue and Expenses" purports to identify cumulated "investment income," "commission income," and operating expenses.  The statement for the eight months ended December 31, 2010, reported total revenue of $679,843 over the eight months.  In reality, account #XXXXXX8450 that Groendyke holds at FXCM lost $226,295.24 for the eight months ending December 31, 2010, and account #XXXXXX2368 that Groendyke holds at FXCM lost $65,650.42 for the eight months ending December 31, 2010.

**B.     False Account Statements and Solicitation Fraud**

32.     Groendyke has regularly communicated with pool participants concerning the JGF pool's purported performance, and on at least a monthly basis commencing in at least June

2010 has emailed to pool participants transmittal statements attaching copies of a "J.G. Forex Fund" investor balance spreadsheet purporting to show the number of investors in JGF and their respective investment, earnings, draws, new investment and balance; a "Combined Account Statement" purportedly received from the forex firm carrying the JGF accounts; a letter from the accounting firm with a "Statement of Assets, Liabilities and Equity" and "Statements of Revenue and Expenses" prepared by the accounting firm.  Through December 9, 2010, Groendyke reported on the status of JGF as of the 9th day of each month, and commenced issuing reports as of month-end as of December 31, 2010.

33.    Groendyke falsely represented to pool participants via these emails that the JGF pool earned gains of 42% in June 2010, 16% in August 2010, 24% in September 2010, 6.73% in October 2010, 11% in November 2010, and 17% in December 2010 trading forex at FXCM in London.  In reality, Groendyke's accounts at FXCM made $198,022.77 in June 2010, but lost $456,825 in July, $14,158 in August and $382.12 in September and have not traded since September 2010.

34.    The "Combined Account Statements" that Groendyke emails to participants each month also are false.  Groendyke represents that the Combined Account Statement is the account statement that he has received from FXCM.  In fact, Groendyke alters the numbers on the actual account statements he receives from FXCM to reflect profits instead of losses, and then issues the falsified statements to pool participants so that it appears to them that the pool is earning consistent monthly profits.  These falsified account statements persuaded at least two pool participants to add to their investments with Groendyke.

35.    On October 15, 2010, Groendyke sent pool participants an email informing them that he was partnering with an entity called Capstone FX in order "to grow the investor base of

our fund," and consequently was offering existing pool participants a commission "for any direct referral to the fund." Groendyke subsequently entered into "Commission Agreements" with at least five pool participants agreeing to pay the pool participants "5% of Manager Commission for each new Investment Group Member he refers up to a combined total of $100,000. Thereafter he will receive 10% of Manager Commission for each additional new Investment Group Member." The five pool participants referred at least nine new pool participants to Groendyke who invested at least $336,432 with him.

36. Groendyke informs pool participants that they can only withdraw their profits, not principal, from the JGF for one year. To conceal his scheme, Groendyke discourages participants from withdrawing funds. For example, when one pool participant asked to withdraw his funds from the JGF, Groendyke advised him that he should withdraw the funds from his retirement account instead because that would "be less complicated."

37. On information and belief, Groendyke makes oral misrepresentations to JGF participants and prospective participants similar to the misrepresentations contained in the emails and attachments that he forwards to JGF participants.

38. Groendyke knew that the representations contained in the account statements he provided to participants and prospective participants were false and misleading or recklessly disregarded the truth at the time he made them.

**C.    Groendyke Has Misappropriated Pool Participant Funds**

39. During the relevant time, Groendyke solicited and accepted at least $953,305 from 54 pool participants for the purpose of trading forex in the JGF, but used no more than $366,950 of that amount to trade forex.

40.     Instead of using participants' funds to trade forex, as Groendyke represented, he transferred $461,385 of their funds to his personal bank account, used at least $26,966.14 to pay purported forex trading profits to existing participants in the manner of a Ponzi scheme, and used $124,970 to trade commodity futures for his own account.  Groendyke did not disclose to participants that he would use their funds for these purposes or any other purpose other than trading forex.

**D.     Groendyke Has Failed To Register With The CFTC**

41.     Groendyke has acted as a CPO since at least January 2010, in that he has solicited and accepted funds from at least 54 pool participants for the purpose of trading in his JGF forex pool.  Additionally, Groendyke has maintained his forex trading accounts in his name and does not disclose to the FCMs/RFEDs that the accounts contain customer funds.  Groendyke failed to disclose this information and violated the Commission's registration requirements.

42.     Although Groendyke acknowledged to at least one pool participant that he is required to register with the CFTC to trade forex on behalf of pool participants,  Groendyke has not registered with the CFTC.

**E.     The Nature of the Transactions**

43.     None of Groendyke, JGF, FXCM, or Oanda is a financial institution, registered broker or dealer, insurance company, financial holding company, investment bank holding company, or the associated person of a financial institution, registered broker or dealer, insurance company, financial holding company, or investment bank holding company.

44.     The forex transactions Groendyke purportedly conducted on behalf of JGF participants were entered into on a leveraged or margined basis, neither resulted in the delivery of actual currency within two days nor created an enforceable obligation to deliver actual

currency between a seller and a buyer that had the ability to deliver and accept delivery,

respectively, in connection with their lines of business.  Rather, these forex contracts purportedly

remained open from day to day and ultimately were offset without anyone making or taking

delivery of actual currency (or facing an enforceable obligation to do so).

45.     Neither Groendyke nor most or all of the participants were ECPs.

# VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE
### VIOLATIONS OF SECTION 4b(a)(2)(A), (B) AND (C) OF THE ACT:
### FRAUD BY MISAPPROPRIATION, MISREPRESENTATION AND DECEIT

46.     The allegations set forth in paragraphs 1 through 45 are realleged and

incorporated herein by reference.

47.     Section 4b(a)(2)(A), (B) and (C) of the Act, as amended, to be codified at

7 U.S.C. § 6b(a)(2)(A), (B) and (C), make it unlawful:

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery … that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market –
>
> (A) to cheat or defraud or attempt to cheat or defraud the other person;
>
> (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]
>
> (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person;…

48.     Pursuant to Section 2(c)(2)(C)(iv) of the Act, Section 4b of the Act applies to Defendant's foreign currency transactions "as if" they were a contract of sale of a commodity for future delivery.

49.     As set forth above, Groendyke cheated and defrauded, or attempted to cheat and defraud, and willfully deceived, or attempted to deceive, his retail forex customers by, among other things, making material misrepresentations and/or failing to disclose material facts to them, misappropriating their funds, issuing false reports to them, and knowingly or recklessly engaging in such acts and practices in violation of Section 4b(a)(2)(A), (B) and (C) of the Act, as amended, to be codified at 7 U.S.C. § 6b(a)(2)(A), (B) and (C).

50.     Each misrepresentation or omission of material fact, instance of misappropriation of customer funds, and issuance of false reports including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(A), (B) and (C) of the Act, as amended, to be codified at 7 U.S.C. § 6b(a)(2)(A), (B) and (C).

## COUNT TWO
### VIOLATIONS OF COMMISSION REGULATION 5.2(b)(1), (2), AND (3): FRAUD BY MISREPRESENTATION, OMISSION, AND MISAPPROPRIATION

51.     The allegations set forth in paragraphs 1 through 45 are realleged and incorporated herein by reference.

52.     Since October 18, 2010, Commission Regulation 5.2(b)(1), (2), and (3), to be codified at 17 C.F.R. § 5.2(b)(1), (2), and (3), has made it unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction: (1) to cheat or defraud or attempt to cheat or defraud any person; (2) willfully to make or cause to be made to any person any false report or statement

13

or cause to be entered for any person any false record; or (3) willfully to deceive or attempt to deceive any person by any means whatsoever.

53. Since October 18, 2010, Groendyke, through use of the mails or other means or instrumentalities of interstate commerce, has violated Regulation 5.2(b)(1) and (3), to be codified at 17 C.F.R. § 5.2(b)(1) and (3), by cheating, defrauding, or deceiving, or attempting to cheat, defraud, or deceive, customers and prospective participants by, among other things: (a) misrepresenting the profitability of his forex trading; (b) failing to disclose trading losses; and (c) misappropriating participant funds.

54. Since October 18, 2010, Groendyke, through use of the mails or other means or instrumentalities of interstate commerce, has violated Regulation 5.2(b)(2), to be codified at 17 C.F.R. § 5.2(b)(2), by, among other things, making or causing to be made false account statements to JGF pool participants.

55. Groendyke has knowingly or recklessly engaged in the acts and practices described in this Count.

56. Groendyke therefore has violated Regulation 5.2(b)(1), (2), and (3), to be codified at 17 C.F.R. § 5.2(b)(1), (2), and (3), with respect to conduct occurring on or after October 18, 2010.

57. Each act of omission of a fact, misrepresentation and misappropriation of funds occurring on or after October 18, 2010, and each false account statement made on or after October 18, 2010,  including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Regulation 5.2(b)(1), (2), and (3), to be codified at 17 C.F.R. § 5.2(b)(1), (2), and (3).

**COUNT THREE**
**VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(cc) OF THE ACT AND REGULATION**
**5.3(a)(2)(i): FAILURE TO REGISTER AS A COMMODITY POOL OPERATOR**

58.     Paragraphs 1 through 45 are realleged and incorporated herein.

59.     Beginning on October 18, 2010 and continuing to the present, Groendyke solicited or accepted orders from non-ECPs in connection with forex transactions, and acted as a CPO, as defined in Regulation 5.1(d)(1), to be codified at 17 C.F.R. § 5.1(d)(1).  Groendyke engaged in this conduct without being registered as a CPO, as required by Regulation 5.3(a)(2)(i), to be codified at 17 C.F.R. § 5.3(a)(2)(i), all in violation of Section 2(c)(2)(C)(iii)(I)(cc) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), and Regulation 5.3(a)(2)(i), to be codified at 17 C.F.R. § 5.3(a)(2)(i).

60.     Each day that Groendyke failed to register as a CPO since October 18, 2010 is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(cc) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), and Regulation 5.3(a)(2)(i),  to be codified at 17 C.F.R. § 5.3(a)(2)(i).

## VII.   RELIEF REQUESTED

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, as amended, to be codified at 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A.     An order finding that Defendant violated Sections 2(c)(2)(C)(iii)(I)(cc) and 4b(a)(2)(A), (B) and (C) of the Act and Regulations 5.2(b)(1), (2) and (3) and 5.3(a)(2)(i);

B.     An ex parte statutory restraining order and an order for preliminary injunction pursuant to Section 6c(a) of the Act, as amended, to be codified at 7 U.S.C. § 13a-1(a), restraining Defendant and all persons or entities insofar as they are acting in the capacity of

Defendant's agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendant, who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

1. Destroying, mutilating, concealing, altering, or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property of Defendant, wherever located, including all such records concerning Defendant's business operations;

2. Refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property of Defendant, wherever located, including all such records concerning Defendant's business operations; and

3. Withdrawing, transferring, removing, dissipating, concealing, or disposing of, in any manner, any funds, assets, or other property, wherever situated, including, but not limited to, all funds, personal property, money, or securities held in safes or safety deposit boxes, and all funds on deposit in any financial institution, bank, or savings and loan account, whether domestic or foreign, held by, under the control of, or in the name of Defendant;

C. Enter orders of preliminary and permanent injunction enjoining Defendant and all persons insofar as they are acting in the capacity of Defendant's agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendant, who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

1.      Engaging in conduct in violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4b(a)(2)(A), (B) and (C) of the Act, and Regulations 5.2(b)(1), (2) and (3) and 5.3(a)(2)(i);

2.      Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a;

3.      Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2010)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i) ("forex contracts")), for his own personal or proprietary account or for any account in which he has a direct or indirect interest;

4.      Having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on his behalf;

5.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

6.      Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

7.      Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such

17

registration or exemption from registration with the Commission, except as

provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010); and

8.      Acting as a principal (as that term is defined in Regulation 3.1(a),

17 C.F.R. § 3.1(a) (2010)), agent or any other officer or employee of any person

(as that term is defined in Section 1a of the Act, as amended, to be codified at 7

U.S.C. § 1a)  registered, exempted from registration or required to be registered

with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R.

§ 4.14(a)(9) (2010);

D.      Enter an order directing that Defendant make an accounting to the Court of all of

(i) Defendant's assets and liabilities, together with all funds Defendant received from and paid to

JGF pool participants or any other persons in connection with forex transactions or purported

forex transactions, including the names, mailing addresses, email addresses, and telephone

numbers of any such persons from whom Defendant received such funds from January 1, 2010 to

the date of such accounting, and (ii) all disbursements for any purpose whatsoever of funds

received from JGF pool participants and other persons, including salaries, commissions, fees,

loans, and other disbursements of money and property of any kind, from January 1, 2010 to and

including the date of such accounting;

E.      Enter an order requiring Defendant immediately to identify and provide an

accounting of all assets and property that he currently maintains outside the United States,

including, but not limited to, all funds on deposit in any financial institution, futures commission

merchant, bank, or savings and loan accounts held by, under the control of, or in the name of

Jeffrey L. Groendyke or JG Forex Fund, or in which any such person or entity has a beneficial

interest of any kind, whether jointly or otherwise, and requiring Defendant to repatriate all funds

18

held in such accounts by paying them to the Clerk of the Court, or as otherwise ordered by the Court, for further disposition in this case;

F.     Enter an order requiring Defendant to disgorge to the Commission all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices that constitute violations of the Act and/or Commission Regulations as described herein, including pre- and post-judgment interest;

G.     Enter an order directing the Defendant and any of his successors to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between him and any of the participants whose funds were received by Defendant as a result of the acts and practices that constitute violations of the Act and/or Commission Regulations as described herein;

H.     Enter an order requiring Defendant to make restitution by making whole each and every pool participant or other person or entity whose funds were received or utilized by him in violation of the provisions of the Act and/or Commission Regulations as described herein, including pre- and post-judgment interest;

I.     Enter an order requiring Defendant to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of $140,000 for each violation of the Act and Regulations occurring on or after October 22, 2008, or triple the monetary gain to Defendant for each violation of the Act and Regulations described herein, plus post-judgment interest;

J.     Enter an order requiring Defendant to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

K.    Enter an Order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.

Dated:  May 3, 2011

Respectfully Submitted,

/s/ Susan J. Gradman
Susan J. Gradman
(Illinois ARDC No. 6225060)
Senior Trial Attorney
sgradman@cftc.gov


/s/ Scott R. Williamson
Scott R. Williamson
(Illinois ARDC No. 06191293)
Deputy Regional Counsel
swilliamson@cftc.gov


/s/ Rosemary Hollinger
Rosemary Hollinger
(Illinois ARDC No. 3123647)
Regional Counsel and Associate Director
rhollinger@cftc.gov

COMMODITY FUTURES TRADING
    COMMISSION
525 W. Monroe St., Suite 1100
Chicago, IL 60661
(312) 596-0523 (Gradman direct dial)
(312) 596-0520 (Hollinger direct dial)
(312) 596-0560 (Williamson direct dial)
(312) 596-0714 (facsimile)

Local Counsel:

/s/Adam B. Townshend
Adam B. Townshend
Assistant U.S. Attorney
U.S. Attorney's Office,
Western District of Michigan
330 Ionia Ave. NW, Suite 501

20

Grand Rapids, MI 49503
Tel: (616) 456-2404
Fax: (616) 456-2510
E-mail: adam.townshend@usdoj.gov